(Slip Opinion)　　　OCTOBER TERM, 2009　　　1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CARR *v*. UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 08–1301.　Argued February 24, 2010—Decided June 1, 2010

Enacted in 2006, the Sex Offender Registration and Notification Act (SORNA) makes it a federal crime for, *inter alia,* any person (1) who "is required to register under [SORNA]," and (2) who "travels in interstate or foreign commerce," to (3) "knowingly fai[l] to register or update a registration," 18 U. S. C. §2250(a).　Before SORNA's enactment, petitioner Carr, a registered sex offender in Alabama, relocated to Indiana without complying with the latter State's registration requirements.　Carr was indicted under §2250 post-SORNA.　The Federal District Court denied Carr's motion to dismiss, which asserted that the §2250 prosecution would violate the Constitution's *Ex Post Facto* Clause because he had traveled to Indiana before SORNA's effective date.　Carr then pleaded guilty and was sentenced to prison.　Affirming the conviction, the Seventh Circuit held that §2250 does not require that a defendant's travel postdate SORNA and that reliance on a defendant's pre-SORNA travel poses no *ex post facto* problem so long as the defendant had a reasonable time to register post-SORNA but failed to do so, as had Carr.

*Held:* Section 2250 does not apply to sex offenders whose interstate travel occurred before SORNA's effective date.　Pp. 5–18.

　(a) The Court rejects the Government's view that §2250(a) requires a sex-offense conviction, subsequent interstate travel, and then a failure to register, and that only the last of these events must occur after SORNA took effect.　The Court instead accepts Carr's interpretation that the statute does not impose liability unless a person, after becoming subject to SORNA's registration requirements, travels across state lines and then fails to register.　That interpretation better accords with §2250(a)'s text, the first element of which can only be satisfied when a person "is required to register under SORNA."

§2250(a)(1). That §2250 sets forth the travel requirement in the present tense ("travels") rather than in the past or present perfect ("traveled" or "has traveled") reinforces this conclusion. See, *e.g.*, *United States* v. *Wilson*, 503 U. S. 329, 333. And because the Dictionary Act's provision that statutory "words used in the present tense include the future as well as the present," 1 U. S. C. §1, implies that the present tense generally does not include the past, regulating a person who "travels" is not readily understood to encompass a person whose only travel occurred before the statute took effect. Indeed, there appears to be no instance in which this Court has construed a present-tense verb in a criminal law to reach preenactment conduct. The statutory context also supports a forward-looking construction of "travels." First, the word "travels" is followed in §2250(a)(2)(B) by a series of other present tense verbs—"enters or leaves, or resides." A statute's "undeviating use of the present tense" is a "striking indic[ator]" of its "prospective orientation." *Gwaltney of Smithfield, Ltd.* v. *Chesapeake Bay Foundation, Inc.*, 484 U. S. 49, 59. Second, the other elements of a §2250 violation are similarly set forth in the present tense: Sections 2250(a)(1) and (a)(3) refer, respectively, to any person who "*is* required to register under [SORNA]" and who "knowingly *fails* to register or update a registration." (Emphasis added.) Had Congress intended preenactment conduct to satisfy §2250's first two requirements but not the third, it presumably would have varied the verb tenses, as it has in numerous other federal statutes. Pp. 5–11.

  (b) The Government's two principal arguments for construing the statute to cover pre-SORNA travel are unpersuasive. Pp. 11–18.

    (1) The claim that such a reading avoids an "anomaly" in the statute's coverage of federal versus state sex offenders is rejected. Section 2250 imposes criminal liability on two categories of persons who fail to adhere to SORNA's registration requirements: any person who is a sex offender "by reason of a conviction under Federal law . . . ," §2250(a)(2)(A), and any other person required to register under SORNA who "travels in interstate or foreign commerce," §2250(a)(2)(B). The Government's assertion that §2250(a)(2)'s jurisdictional reach should have comparable breadth as applied to both federal and state sex offenders is little more than *ipse dixit*. It is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA's registration requirements by federal sex offenders, who typically would have spent time under federal criminal supervision. It is similarly reasonable for Congress to have given the States primary responsibility for supervising and ensuring compliance among state sex offenders and to have subjected such offenders to federal criminal liability only

when, after SORNA's enactment, they use interstate commerce channels to evade a State's reach. The Seventh Circuit erred in analogizing §2250 to 18 U. S. C. §922(g), which prohibits convicted felons from "possess[ing] in . . . commerc[e] any firearm or ammunition." According to the lower court, §2250(a), like §922(g), uses movement in interstate commerce as a jurisdictional element to establish a constitutional predicate for the statute, not to create a temporal requirement. However, the proper analogy here is not between the travel of a sex offender and the movement of a firearm, but between the sex offender who "travels" and the convicted felon who "possesses." The act of travel by a convicted sex offender may serve as a jurisdictional predicate for §2250, but it is also, like the act of possession, the very conduct at which Congress took aim. Pp. 11–14.

(2) Also unavailing is the Government's invocation of one of SORNA's purposes, to locate sex offenders who failed to abide by their registration obligations. The Government's argument confuses SORNA's general goal with §2250's specific purpose. Section 2250 is not a stand-alone response to the problem of missing sex offenders; it is embedded in a broader statutory scheme enacted to address deficiencies in prior law that had enabled sex offenders to slip through the cracks. By facilitating the collection of sex-offender information and its dissemination among jurisdictions, these other provisions, not §2250, stand at the center of Congress' effort to account for missing sex offenders. While subjecting pre-SORNA travelers to punishment under §2250 may well be consistent with the aim of finding missing sex offenders, a contrary construction in no way frustrates that broad goal. Taking account of SORNA's overall structure, there is little reason to doubt that Congress intended §2250 to do exactly what it says: to subject to federal prosecution sex offenders who elude SORNA's registration requirements by traveling in interstate commerce. Pp. 14–17.

(3) None of the legislative materials the Government cites as evidence of SORNA's purpose calls this reading into question. To the contrary, the House Judiciary Committee's Report suggests not only that a prohibition on postenactment travel is consonant with Congress' goals, but also that it is the rule Congress in fact chose to adopt. Pp. 17–18.

(c) Because §2250 liability cannot be predicated on pre-SORNA travel, the Court need not address whether the statute violates the *Ex Post Facto* Clause. P. 18.

551 F. 3d 578, reversed and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, KENNEDY, and BREYER, JJ., joined, and in which

Syllabus

SCALIA, J., joined except for Part III–C.  SCALIA, J., filed an opinion concurring in part and concurring in the judgment.  ALITO, J., filed a dissenting opinion, in which THOMAS and GINSBURG, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–1301

## THOMAS CARR, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT

[June 1, 2010]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Since 1994, federal law has required States, as a condition for the receipt of certain law enforcement funds, to maintain federally compliant systems for sex-offender registration and community notification. In an effort to make these state schemes more comprehensive, uniform, and effective, Congress in 2006 enacted the Sex Offender Registration and Notification Act (SORNA or Act) as part of the Adam Walsh Child Protection and Safety Act, Pub. L. 109–248, Tit. I, 120 Stat. 590. Among its provisions, the Act established a federal criminal offense covering, *inter alia*, any person who (1) "is required to register under [SORNA]," (2) "travels in interstate or foreign commerce," and (3) "knowingly fails to register or update a registration." 18 U. S. C. §2250(a). At issue in this case is whether §2250 applies to sex offenders whose interstate travel occurred prior to SORNA's effective date and, if so, whether the statute runs afoul of the Constitution's prohibition on *ex post facto* laws. See Art. I, §9, cl. 3. Liability under §2250, we hold, cannot be predicated on pre-SORNA travel. We therefore do not address the *ex post facto* question.

I

In May 2004, petitioner Thomas Carr pleaded guilty in Alabama state court to first-degree sexual abuse. He was sentenced to 15 years' imprisonment, with all but two years suspended. Receiving credit for time previously served, Carr was released on probation on July 3, 2004, and he registered as a sex offender as required by Alabama law.

In late 2004 or early 2005, prior to SORNA's enactment, Carr relocated from Alabama to Indiana. He did not comply with Indiana's sex-offender registration requirements. In July 2007, Carr came to the attention of law enforcement in Fort Wayne, Indiana, following his involvement in a fight.

On August 22, 2007, federal prosecutors filed an indictment in the United States District Court for the Northern District of Indiana charging Carr with failing to register in violation of §2250. Carr moved to dismiss the indictment, asserting that because he traveled to Indiana prior to SORNA's effective date, it would violate the *Ex Post Facto* Clause to prosecute him under §2250. The District Court denied Carr's motion, and Carr entered a conditional guilty plea, preserving his right to appeal. He received a 30-month prison sentence.

The United States Court of Appeals for the Seventh Circuit consolidated Carr's appeal with that of a similarly situated defendant, who, in addition to raising an *ex post facto* claim, asserted that §2250, by its terms, does not apply to persons whose interstate travel preceded SORNA's enactment. Beginning with the statutory argument, the Court of Appeals held that §2250 "does not require that the defendant's travel postdate the Act." *United States* v. *Dixon*, 551 F. 3d 578, 582 (2008). The court relied principally on its understanding of SORNA's underlying purpose:

"The evil at which [the Act] is aimed is that convicted sex offenders registered in one state might move to another state, fail to register there, and thus leave the public unprotected. The concern is as acute in a case in which the offender moved before the Act was passed as in one in which he moved afterward." *Ibid.* (citation omitted).

The court drew an analogy to 18 U. S. C. §922(g), which prohibits convicted felons from "possess[ing] in or affecting commerc[e] any firearm or ammunition." "The danger posed by such a felon is unaffected by when the gun crossed state lines . . . , and so it need not have crossed after the statute was passed." 551 F. 3d, at 582 (citing *Scarborough* v. *United States*, 431 U. S. 563 (1977)). According to the court, §2250(a), like §922(g), uses movement in interstate commerce as a jurisdictional element "to establish a constitutional predicate for the statute . . . rather than to create a temporal requirement." 551 F. 3d, at 583.

Reading §2250 to encompass pre-SORNA travel, the Seventh Circuit recognized, created a conflict with the Tenth Circuit's decision in *United States* v. *Husted*, 545 F. 3d 1240 (2008). In holding that §2250's coverage "is limited to those individuals who travel in interstate commerce after the Act's effective date," the Tenth Circuit emphasized "Congress's use of the present tense form of the verb 'to travel' . . . , which according to ordinary English grammar, does not refer to travel that has already occurred." *Id.*, at 1243–1244. Rejecting this analysis, the Seventh Circuit characterized Congress' choice of tenses as "'not very revealing.'" 551 F. 3d, at 583 (quoting *Scarborough*, 431 U. S., at 571).

Having dispensed with the statutory question, the Seventh Circuit considered the claim of Carr and his co-appellant that predicating a §2250 prosecution on pre-

SORNA travel violates the *Ex Post Facto* Clause. Reliance on a defendant's pre-SORNA travel, the court concluded, poses no *ex post facto* problem so long as the defendant had "reasonable time" to register after SORNA took effect but failed to do so. 551 F. 3d, at 585. Noting that Carr remained unregistered five months after SORNA became applicable to him, the Seventh Circuit affirmed his conviction. *Id.*, at 586–587. The court reversed the conviction of Carr's co-appellant, finding that he had not been given a sufficient grace period to register.

In view of the division among the Circuits as to the meaning of §2250's "travel" requirement,[1] we granted certiorari, 557 U. S. __ (2009), to decide the statute's applicability to pre-SORNA travel and, if necessary, to consider the statute's compliance with the *Ex Post Facto* Clause.[2]

———————

[1] While the Seventh and Tenth Circuits have confronted the question directly, other Circuits have also touched on it. Aligning itself with the Seventh Circuit, the Eleventh Circuit has analogized 18 U. S. C. §2250(a) to the felon-in-possession statute, §922(g), and applied it to a sex offender who traveled before SORNA became applicable to him. *United States* v. *Dumont*, 555 F. 3d 1288, 1291–1292 (2009) *(per curiam)*. In contrast, the Eighth Circuit has stated in dictum that §2250(a) "punishes convicted sex offenders who travel in interstate commerce *after the enactment of SORNA*." *United States* v. *May*, 535 F. 3d 912, 920 (2008) (emphasis added).

[2] There is a separate conflict among the Courts of Appeals as to when SORNA's registration requirements became applicable to persons convicted of sex offenses prior to the statute's enactment. Several Circuits, including the Seventh, have taken the position that the Act did not apply to such sex offenders until the Attorney General provided for their inclusion by issuing an interim regulation, 28 CFR §72.3, 72 Fed. Reg. 8897, on February 28, 2007. See, *e.g.*, *United States* v. *Hatcher*, 560 F. 3d 222, 226–229 (CA4 2009); *United States* v. *Cain*, 583 F. 3d 408, 414–419 (CA6 2009); *United States* v. *Dixon*, 551 F. 3d 578, 582 (CA7 2008) (case below); *United States* v. *Madera*, 528 F. 3d 852, 857–859 (CA11 2008) *(per curiam)*. Other Circuits have held that persons with pre-SORNA sex-offense convictions became subject to the Act's registration requirements upon the statute's enactment in July

## II

As relevant here, §2250 provides:

> "(a) IN GENERAL.—Whoever—
>
> "(1) is required to register under the Sex Offender Registration and Notification Act;
>
> "(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>
> "(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
> "(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> "shall be fined under this title or imprisoned not more than 10 years, or both."

For a defendant to violate this provision, Carr and the Government agree, the statute's three elements must "be satisfied in sequence, culminating in a post-SORNA fail-

_____

2006. See, *e.g.*, *May*, 535 F. 3d, at 915–919; *United States* v. *Hinckley*, 550 F. 3d 926, 929–935 (CA10 2008). Because Carr traveled from Alabama to Indiana before both the enactment of SORNA and the Attorney General's regulation, we have no occasion to consider whether a pre-SORNA sex offender whose travel and failure to register occurred between July 2006 and February 2007 is subject to liability under §2250, and we express no view on that question. We similarly express no view as to whether §72.3 was properly promulgated—a question that has also divided the Circuits. Compare *Cain*, 583 F. 3d, at 419–424 (holding that the Attorney General lacked good cause for issuing the interim regulation without adhering to the notice-and-comment and publication requirements of the Administrative Procedure Act (APA)), with *United States* v. *Dean*, No. 09–13115, 2010 WL 1687618, *3–*8 (CA11, Apr. 28, 2010) (finding no APA violation); *United States* v. *Gould*, 568 F. 3d 459, 469–470 (CA4 2009) (same).

ure to register."  Brief for United States 13; see also Reply
Brief for Petitioner 4, 7, n. 6.  A sequential reading, the
parties recognize, helps to assure a nexus between a de-
fendant's interstate travel and his failure to register as a
sex offender.  Persons convicted of sex offenses under state
law who fail to register in their State of conviction would
otherwise be subject to federal prosecution under §2250
even if they had not left the State after being convicted—
an illogical result given the absence of any obvious federal
interest in punishing such state offenders.[3]

While both parties accept that the elements of §2250
should be read sequentially, they disagree on the event
that sets the sequence in motion.  In the Government's
view, the statute is triggered by a sex-offense conviction,
which must be followed by interstate travel, and then a
failure to register under SORNA.  Only the last of these
events, the Government maintains, must occur after
SORNA took effect; the predicate conviction and the travel
may both have predated the statute's enactment.  Carr, in
contrast, asserts that the statutory sequence begins when
a person becomes subject to SORNA's registration re-
quirements.  The person must then travel in interstate
commerce and thereafter fail to register.  All of these
events, Carr avers, necessarily postdate SORNA's enact-
ment because a sex offender could not have been required
to register under SORNA until SORNA became the law.

Carr's interpretation better accords with the statutory
text.  By its terms, the first element of §2250(a) can only
be satisfied when a person "is required to register *under
the Sex Offender Registration and Notification Act.*"
§2250(a)(1) (emphasis added).  In an attempt to reconcile
its preferred construction with the words of the statute,

---

[3] For persons convicted of sex offenses under federal or Indian tribal
law, interstate travel is not a prerequisite to §2250 liability.  See
§2250(a)(2)(A).

the Government insists that this language is merely "a shorthand way of identifying those persons who have a [sex-offense] conviction in the classes identified by SORNA." Brief for United States 19–20. To reach this conclusion, the Government observes that another provision of SORNA, 42 U. S. C. §16913(a), states that the Act's registration requirements apply to "sex offender[s]." A "sex offender" is elsewhere defined as "an individual who was convicted of a sex offense." §16911(1). Thus, as the Government would have it, Congress used 12 words and two implied cross-references to establish that the first element of §2250(a) is that a person has been convicted of a sex offense. Such contortions can scarcely be called "shorthand." It is far more sensible to conclude that Congress meant the first precondition to §2250 liability to be the one it listed first: a "require[ment] to register under [SORNA]." Once a person becomes subject to SORNA's registration requirements, which can occur only after the statute's effective date, that person can be convicted under §2250 if he thereafter travels and then fails to register.[4]

That §2250 sets forth the travel requirement in the present tense ("travels") rather than in the past or present perfect ("traveled" or "has traveled") reinforces the conclu-

––––––––––

[4] Offering a variation on the Government's argument, the dissent contends that, "[i]n accordance with current drafting conventions, §2250(a) speaks, not as of the time when the law went into effect, but as of the time when the first act necessary for conviction is committed." *Post*, at 7 (opinion of ALITO, J.). This occurs, the dissent maintains, "when an individual is convicted of a qualifying sex offense, for it is that act that triggers the requirement to register under SORNA." *Ibid.* The dissent's account cannot be squared with the statutory text. "[T]he first act necessary for conviction" under §2250(a) is not a predicate sex-offense conviction. It is a requirement "to register under [SORNA]." §2250(a)(1). Thus, even if the dissent is correct that legislative drafters do not invariably use the moment of enactment to mark the dividing line between covered and uncovered acts, they have clearly done so here.

sion that preenactment travel falls outside the statute's
compass. Consistent with normal usage, we have fre-
quently looked to Congress' choice of verb tense to ascer-
tain a statute's temporal reach. See, *e.g.*, *United States* v.
*Wilson*, 503 U. S. 329, 333 (1992) ("Congress' use of a verb
tense is significant in construing statutes"); *Gwaltney of
Smithfield, Ltd.* v. *Chesapeake Bay Foundation, Inc.*, 484
U. S. 49, 57 (1987) ("Congress could have phrased its
requirement in language that looked to the past . . . , but it
did not choose this readily available option"); *Barrett* v.
*United States*, 423 U. S. 212, 216 (1976) (observing that
Congress used the present perfect tense to "denot[e] an act
that has been completed"). The Dictionary Act also as-
cribes significance to verb tense. It provides that, "[i]n
determining the meaning of any Act of Congress, unless
the context indicates otherwise[,] . . . words used in the
present tense include the future as well as the present." 1
U. S. C. §1. By implication, then, the Dictionary Act in-
structs that the present tense generally does not include
the past. Accordingly, a statute that regulates a person
who "travels" is not readily understood to encompass a
person whose only travel occurred before the statute took
effect. Indeed, neither the Government nor the dissent
identifies any instance in which this Court has construed
a present-tense verb in a criminal law to reach preenact-
ment conduct.[5]

————————

[5] The Court of Appeals quoted a Ninth Circuit decision for the propo-
sition that "'the present tense is commonly used to refer to past, pre-
sent, and future all at the same time.'" 551 F. 3d, at 583 (quoting
*Coalition for Clean Air* v. *Southern Cal. Edison Co.*, 971 F. 2d 219, 225
(CA9 1992)). Neither court offered examples of such usage. Perhaps,
as the Dictionary Act itself recognizes, there may be instances in which
"context" supports this sort of omnitemporality, but it is not the typical
understanding of the present tense in either normal discourse or
statutory construction. Taken in context, the word "travels" as it
appears in §2250 is indistinguishable from the present-tense verbs that
appear in myriad other criminal statutes to proscribe conduct on a

In this instance, the statutory context strongly supports a forward-looking construction of "travels." First, the word "travels" is followed in §2250(a)(2)(B) by a series of other present tense verbs—"*enters* or *leaves*, or *resides* in, Indian country." (Emphasis added.) This Court has previously described a statute's "undeviating use of the present tense" as a "striking indic[ator]" of its "prospective orientation." *Gwaltney*, 484 U. S., at 59. The Seventh Circuit thought otherwise, reasoning that it would "mak[e] no sense" for "a sex offender who has resided in Indian country since long before the Act was passed [to be] subject to the Act but not someone who crossed state lines before the Act was passed." 551 F. 3d, at 583. As a textual matter, however, it is the Seventh Circuit's approach that makes little sense: If "travels" means "traveled" (*i.e.*, a person "travels" if he crossed state lines *before* SORNA's enactment), then the only way to avoid an incongruity among neighboring verbs would be to construe the phrase "resides i[n] Indian country" to encompass persons who once resided in Indian country but who left before SORNA's enactment and have not since returned—an implausible reading that neither the Seventh Circuit, nor the Government, nor the dissent endorses.

Second, the other elements of a §2250 violation are similarly set forth in the present tense. Sections 2250(a)(1) and (a)(3) refer, respectively, to any person who "*is* required to register under [SORNA]" and who "knowingly *fails* to register or update a registration as required

---

prospective basis. Examining a criminal law with a travel element similar to the one at issue here, the Ninth Circuit itself recently agreed that "the present tense verb 'travels,' most sensibly read, does not refer to travel that occurred in the past—that is, before the enactment of the statute." *United States* v. *Jackson*, 480 F. 3d 1014, 1019 (CA9 2007) (interpreting 18 U. S. C. §2423(c), which imposes criminal penalties on "[a]ny United States citizen . . . who travels in foreign commerce, and engages in any illicit sexual conduct with another person").

by [SORNA]." (Emphasis added.) The Government accepts that this last element—a knowing failure to register or update a registration—must postdate SORNA's enactment. Had Congress intended preenactment conduct to satisfy the first two requirements of §2250 but not the third, it presumably would have varied the verb tenses to convey this meaning. Indeed, numerous federal statutes use the past-perfect tense to describe one or more elements of a criminal offense when coverage of preenactment events is intended. See, *e.g.*, 18 U. S. C. A. §249(a)(2)(B)(iii) (Supp. 2010) (proscribing hate crimes in which "the defendant employs a firearm, dangerous weapon, explosive or incendiary device, or other weapon that *has traveled* in interstate or foreign commerce" (emphasis added)); 18 U. S. C. §922(g)(9) (2006 ed.) (proscribing firearm possession or transport by any person "who *has been convicted*" of a felony or a misdemeanor crime of domestic violence (emphasis added)); §2252(a)(2) (2006 ed., Supp. II) (making it unlawful for any person to receive or distribute a visual depiction of a minor engaging in sexually explicit conduct that "*has been mailed*, or *has been shipped or transported* in or affecting interstate or foreign commerce" (emphasis added)). The absence of similar phrasing here provides powerful evidence that §2250 targets only postenactment travel.[6]

—————

[6] The dissent identifies several "SORNA provisions that plainly use the present tense to refer to events that . . . may have occurred before SORNA took effect." *Post*, at 10. All of these examples appear in 42 U. S. C. §16911, a definitional section that merely elucidates the meaning of certain statutory terms and proscribes no conduct. All but two of the provisions, moreover, rely on the term "sex offender," which §16911(1) defines to mean "an individual who *was convicted* of a sex offense." (Emphasis added.) The remaining provisions are §16911(7), which simply uses "involves" rather than "involved" to define whether a prior conviction qualifies as a "specified offense against a minor," and §16911(8), which makes plain that its present-tense reference to an offender's age refers to age "at the time of the offense." These examples

## III

Echoing the Seventh Circuit's assessment that Congress' use of present-tense verbs in §2250 is "not very revealing," Brief for United States 17, the Government offers two principal arguments for construing the statute to cover pre-SORNA travel: First, such a reading avoids an "anomaly" in the statute's coverage of federal versus state sex offenders; and second, it "better effectuates the statutory purpose." *Id.*, at 22 (capitalization omitted). Neither argument persuades us to adopt the Government's strained reading of the statutory text.

## A

Section 2250 imposes criminal liability on two categories of persons who fail to adhere to SORNA's registration requirements: any person who is a sex offender "by reason of a conviction under Federal law . . . , the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States," §2250(a)(2)(A), and any other person required to register under SORNA who "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country," §2250(a)(2)(B). According to the Government, these categories correspond to "two alternate sources of power to achieve Congress's aim of broadly registering sex offenders." *Id.*, at 22. Placing pre-SORNA travelers within the statute's coverage, the Government maintains, "ensures that the jurisdictional reach of Section 2250(a)(2) has a

_____

thus provide scant support for the proposition that §2250 uses "travels" to refer to pre-SORNA travel. Given the well-established presumption against retroactivity and, in the criminal context, the constitutional bar on *ex post facto* laws, it cannot be the case that a statutory prohibition set forth in the present tense applies by default to acts completed before the statute's enactment. See *Johnson* v. *United States*, 529 U. S. 694, 701 (2000) ("Absent a clear statement of that intent, we do not give retroactive effect to statutes burdening private interests").

comparable breadth as applied to both federal and state sex offenders." *Id.*, at 21.

The Government's pronouncement that §2250 should have an "equally broad sweep" with respect to federal and state offenders, *id.*, at 22, is little more than *ipse dixit*. Had Congress intended to subject any unregistered state sex offender who has ever traveled in interstate commerce to federal prosecution under §2250, it easily could have adopted language to that effect. That it declined to do so indicates that Congress instead chose to handle federal and state sex offenders differently. There is nothing "anomal[ous]" about such a choice. To the contrary, it is entirely reasonable for Congress to have assigned the Federal Government a special role in ensuring compliance with SORNA's registration requirements by federal sex offenders—persons who typically would have spent time under federal criminal supervision. It is similarly reasonable for Congress to have given the States primary responsibility for supervising and ensuring compliance among state sex offenders and to have subjected such offenders to federal criminal liability only when, after SORNA's enactment, they use the channels of interstate commerce in evading a State's reach.

In this regard, it is notable that the federal sex-offender registration laws have, from their inception, expressly relied on state-level enforcement. Indeed, when it initially set national standards for state sex-offender registration programs in 1994, Congress did not include any federal criminal liability. Congress instead conditioned certain federal funds on States' adoption of "criminal penalties" on any person "required to register under a State program . . . who knowingly fails to so register and keep such registration current." Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub. L. 103–322, Tit. XVII, §170101(c), 108 Stat. 2041, 42 U. S. C. §14071(d). Two years later, Congress supplemented state

enforcement mechanisms by subjecting to federal prosecution any covered sex offender who "changes address to a State other than the State in which the person resided at the time of the immediately preceding registration" and "knowingly fails to" register as required. Pam Lychner Sexual Offender Tracking and Identification Act of 1996, Pub. L. 104–236, §2, 110 Stat. 3095, 3096, 42 U. S. C. §§14072(g)(3), (i).[7] The prospective orientation of this provision is apparent. No statutory gap necessitated coverage of unregistered offenders who "change[d] address" before the statute's enactment; the prosecution of such persons remained the province of the States.

In enacting SORNA, Congress preserved this basic allocation of enforcement responsibilities. To strengthen state enforcement of registration requirements, Congress established, as a funding condition, that "[e]ach jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter." §16913(e).[8] Meanwhile, Congress in §2250 exposed to federal criminal liability, with penalties of up to 10 years' imprisonment, persons required to register under SORNA over whom the Federal Government has a direct supervisory interest or who threaten the efficacy of the statutory scheme by traveling in interstate commerce.

––––––––––

[7] Pre-SORNA law also exposed to federal criminal liability any person whose State "ha[d] not established a minimally sufficient sexual offender registration program" and who was thus required to register with the Federal Bureau of Investigation (FBI). See 42 U. S. C. §§14072(c), (g)(2), (i). SORNA does not include a similar FBI registration requirement, presumably because, by the time of the statute's enactment, "every State . . . had enacted some" type of registration system. *Smith* v. *Doe*, 538 U. S. 84, 90 (2003).

[8] The law in Indiana, Carr's State of residence, makes the failure to register a Class D felony, which carries a prison term of up to three years' imprisonment. Ind. Code §§11–8–8–17(a), 35–50–2–7(a) (2009).

Understanding the act of travel as an aspect of the harm Congress sought to punish serves to distinguish §2250 from the felon-in-possession statute to which the Seventh Circuit analogized. See 551 F. 3d, at 582–583. In *Scarborough*, this Court held that a prior version of the statute, which imposed criminal liability on any convicted felon who "'possesses . . . in commerce or affecting commerce . . . any firearm,'" 431 U. S., at 564 (quoting 18 U. S. C. App. §1202(a) (1970 ed.)), did not require the Government to prove postenactment movement of the firearm across state lines. According to the Court, Congress had given "no indication of any concern with either the movement of the gun or the possessor or with the time of acquisition." 431 U. S., at 572. Its aim was simply "to keep guns out of the hands of" convicted felons, *ibid.*, and, by using the phrase "in commerce or affecting commerce," it invoked the full breadth of its Commerce Clause authority to achieve that end. No one in *Scarborough* disputed, however, that the act of possession had to occur postenactment; a felon who "possess[ed]" a firearm only preenactment was plainly outside the statute's sweep. In this case, the proper analogy is not, as the Seventh Circuit suggested, between the travel of a sex offender and the movement of a firearm; it is between the sex offender who "travels" and the convicted felon who "possesses." The act of travel by a convicted sex offender may serve as a jurisdictional predicate for §2250, but it is also, like the act of possession, the very conduct at which Congress took aim.

## B

In a final effort to justify its position, the Government invokes one of SORNA's underlying purposes: to locate sex offenders who had failed to abide by their registration obligations. SORNA, the Government observes, was motivated at least in part by Congress' concern about these "missing" sex offenders—a problem the House

Committee on the Judiciary expressly linked to interstate
travel: "The most significant enforcement issue in the sex
offender program is that over 100,000 sex offenders, or
nearly one-fifth in the Nation[,] are 'missing,' meaning
they have not complied with sex offender registration
requirements. This typically occurs when the sex offender
moves from one State to another." H. R. Rep. No. 109–
218, pt. 1, p. 26 (2005). The goal of tracking down missing
sex offenders, the Government maintains, "is surely better
served by making Section 2250 applicable to them in their
new States of residence immediately than by waiting for
them to travel in interstate commerce and fail to register
yet again." Brief for United States 23–24. The Court of
Appeals expressed a similar view. See 551 F. 3d, at 582.[9]

The Government's argument confuses a general goal of
SORNA with the specific purpose of §2250. Section 2250
is not a stand-alone response to the problem of missing sex

---

[9] Also making this point, the dissent maintains that "[i]nterpreting
§2250(a)(2)(B) to reach only postenactment travel severely impairs
§2250(a)'s effectiveness" by "plac[ing] beyond the reach of the federal
criminal laws" "the many sex offenders who had managed to avoid pre-
existing registration regimes." *Post*, at 14. The dissent sees "no appar-
ent reason why Congress would have wanted to impose such a require-
ment." *Ibid.* Yet the dissent approves an even greater impairment.
Addressing a dispute we leave unresolved, see n. 2, *supra*, the dissent
would hold that, in enacting SORNA, "Congress remained neutral on
the question whether the Act reaches those with pre-SORNA sex-
offense convictions." *Post*, at 10. The dissent's view, in other words, is
that SORNA does not apply of its own force to *any* sex offenders con-
victed prior to the statute's enactment—a reading wholly inconsistent
with the dissent's description of SORNA as "a response to a dangerous
gap in the then-existing sex-offender-registration laws." *Post*, at 13. If,
as the dissent accepts, Congress left open the possibility that *no* preen-
actment offenders would face liability under §2250, then it is certainly
not unreasonable to conclude that Congress limited the statute's
coverage to offenders who travel after its enactment. Indeed, it is
strange to think that Congress might have enacted a statute that
declined to cover pre-SORNA offenders but nevertheless covered pre-
SORNA travel.

offenders; it is embedded in a broader statutory scheme
enacted to address the deficiencies in prior law that had
enabled sex offenders to slip through the cracks. See 42
U. S. C. §16901 ("Congress in this chapter establishes a
comprehensive national system for the registration of [sex]
offenders"). Among its many provisions, SORNA instructs
States to maintain sex-offender registries that compile an
array of information about sex offenders, §16914; to make
this information publicly available online, §16918; to share
the information with other jurisdictions and with the
Attorney General for inclusion in a comprehensive na-
tional sex-offender registry, §§16919–16921; and to "pro-
vide a criminal penalty that includes a maximum term of
imprisonment that is greater than 1 year for the failure of
a sex offender to comply with the requirements of this
subchapter," §16913(e). Sex offenders, in turn, are re-
quired to "register, and keep the registration current, in
each jurisdiction where the offender resides, where the
offender is an employee, and where the offender is a stu-
dent," §16913(a), and to appear in person periodically to
"allow the jurisdiction to take a current photograph, and
verify the information in each registry in which that of-
fender is required to be registered," §16916. By facilitat-
ing the collection of sex-offender information and its dis-
semination among jurisdictions, these provisions, not
§2250, stand at the center of Congress' effort to account for
missing sex offenders.

Knowing that Congress aimed to reduce the number of
noncompliant sex offenders thus tells us little about the
specific policy choice Congress made in enacting §2250.
While subjecting pre-SORNA travelers to punishment
under §2250 may well be consistent with the aim of find-
ing missing sex offenders, a contrary construction in no
way frustrates that broad goal. Taking account of
SORNA's overall structure, we have little reason to doubt
that Congress intended §2250 to do exactly what it says:

to subject to federal prosecution sex offenders who elude SORNA's registration requirements by traveling in interstate commerce. Cf. *Mertens* v. *Hewitt Associates*, 508 U. S. 248, 261 (1993) ("[V]ague notions of a statute's 'basic purpose' are . . . inadequate to overcome the words of its text regarding the *specific* issue under consideration").

C

None of the legislative materials the Government cites as evidence of SORNA's purpose calls this reading into question. To the contrary, the report of the House Judiciary Committee suggests not only that a prohibition on postenactment travel is consonant with Congress' goals, but also that it is the rule Congress in fact chose to adopt. As the Government acknowledges, the bill under consideration by the Committee contained a version of §2250 that "would not have reached pre-enactment interstate travel." Brief for United States 24, n. 9. This earlier version imposed federal criminal penalties on any person who "receives a notice from an official that such person is required to register under [SORNA] and . . . thereafter travels in interstate or foreign commerce, or enters or leaves Indian country." H. R. Rep. No. 109–218, pt. 1, at 9; see also *id.*, at 26 ("[S]ex offenders will now face Federal prosecution . . . if they cross a State line and fail to comply with the sex offender registration and notification requirements contained in the legislation"). Yet this did not stop the Committee from describing its legislation as a solution to the problem of missing sex offenders. See *id.*, at 23–24, 26, 45–46. The Government identifies nothing in the legislative record to suggest that, in modifying this language during the course of the legislative process, Congress intended to alter the statute's temporal sweep.[10]

————————

[10] Among other changes, Congress eliminated the language that conditioned liability on proof of notice, and it removed the word "thereafter," presumably as redundant in light of the sequential structure of the

At the very least, the close correspondence between the Committee's discussion of missing sex offenders and its recognition of the travel element's prospective application would seem to confirm that reading §2250 to reach only postenactment travel does not contravene SORNA's underlying purposes, let alone result in an absurdity that would compel us to disregard the statutory text. Cf. *Arlington Central School Dist. Bd. of Ed.* v. *Murphy*, 548 U. S. 291, 296 (2006) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the statutory language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms" (internal quotation marks and citation omitted)).

\*    \*    \*

Having concluded that §2250 does not extend to preenactment travel, we need not consider whether such a construction would present difficulties under the Constitution's *Ex Post Facto* Clause. The judgment of the United States Court of Appeals for the Seventh Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

―――――――
enacted statute.

# SUPREME COURT OF THE UNITED STATES

———————

No. 08–1301

———————

## THOMAS CARR, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT

[June 1, 2010]

JUSTICE SCALIA, concurring in part and concurring in
the judgment.

I join the Court's opinion except for Part III–C. I do not
join that part because only the text Congress voted on, and
not unapproved statements made or comments written
during its drafting and enactment process, is an authoritative indicator of the law. But even if those preenactment materials were relevant, it would be unnecessary to
address them here. The Court's thorough discussion of
text, context, and structure, *ante*, at 5–17, demonstrates
that the meaning of 18 U. S. C. §2250(a) is plain. As the
Court acknowledges, *ante*, at 18, but does not heed, we
must not say more:

> "We have stated time and again that courts must presume that a legislature says in a statute what it
> means and means in a statute what it says there.
> When the words of a statute are unambiguous, then,
> this first canon is also the last: judicial inquiry is
> complete." *Connecticut Nat. Bank* v. *Germain*, 503
> U. S. 249, 253–254 (1992) (citations and internal quotation marks omitted).

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–1301

_____

## THOMAS CARR, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SEVENTH CIRCUIT

[June 1, 2010]

JUSTICE ALITO, with whom JUSTICE THOMAS and
JUSTICE GINSBURG join, dissenting.

The Court's decision misinterprets and hobbles 18
U. S. C. §2250(a), a provision of the Sex Offender Registra-
tion and Notification Act (SORNA or Act) that is designed
to prevent dangerous sex offenders from evading registra-
tion requirements. SORNA requires convicted sex offend-
ers to register, and to keep their registrations current, in
each jurisdiction where they live, work, and go to school,
42 U. S. C. §16913, and the provision at issue here, 18
U. S. C. §2250(a), makes it a crime for a convicted sex
offender who moves in interstate commerce[1] to fail to
abide by the Act's registration requirements. The question
that we must decide is whether §2250(a) applies only to
those sex offenders who travel in interstate commerce
after SORNA became law or whether the statute also
reaches sex offenders, like petitioner, who were convicted[2]

_____

[1] Section 2250(a) also applies to persons with federal sex-offense con-
victions, those who travel in foreign commerce, and those who enter,
leave, or reside in Indian country. For convenience, I will refer in this
opinion solely to interstate travel.

[2] The Court holds only that §2250(a)(2)(B) does not apply to a person
who moved in interstate commerce before SORNA took effect. The
Court does not address the separate question whether §2250(a) may
validly be applied to a person who was convicted of a qualifying offense
before SORNA was enacted. Congress delegated to the Attorney
General the authority to decide whether the Act's registration require-

and traveled before SORNA took effect but violated the registration requirement after that date.

The Court's answer is that §2250(a) applies only to sex offenders who moved from State to State after SORNA became law. The Court reaches this conclusion for two reasons: (1) the verb tense used in §2250(a)(2)(B); and (2) the sequence in which the elements of the offense are listed.

As I will attempt to show, the Court's textual arguments are thoroughly unsound. And the conclusion that the Court reaches makes no sense. To appreciate the folly of the Court's interpretation, consider the following two cases.

The first involves a situation in which, for present purposes, I assume that §2250(a) applies.[3] A man convicted in State A for sexual abuse is released from custody in that State and then, after the enactment of SORNA, moves to State B and fails to register as required by State B law. Section 2250(a) makes this offender's failure to register in State B a federal crime because his interstate movement frustrates SORNA's registration requirements. Because this offender is convicted and then released from custody in State A, the State A authorities know of his presence in their State and are thus in a position to try to ensure that he remains registered. At the time of his release, they can ascertain where he intends to live, and they can make sure that he registers as required by state law. Thereafter, they can periodically check the address

——————

ments—and thus §2250(a)'s criminal penalties—should apply to persons in the latter category, 42 U. S. C. §16913(d), and the Attorney General has promulgated a regulation providing that they do, 72 Fed. Reg. 8897 (2007) (codified at 28 CFR §72.3 (2009)). Because the Court does not address the validity of this regulation, I proceed on the assumption that 18 U. S. C. §2250(a) reaches persons with pre-SORNA sex-offense convictions.

[3] See n. 2, *supra.*

at which he is registered to confirm that he still resides there. And even if he moves without warning to some other address in the State, they can try to track him down. Once this offender leaves State A, however, the authorities in that State are severely limited in their ability to monitor his movements. And because the State B authorities have no notice of his entry into their State, they are at a great disadvantage in trying to enforce State B's registration law. Congress enacted §2250(a) in order to punish and deter interstate movement that seriously undermines the enforcement of sex-offender-registration laws.

The second case is the same as the first in all respects except that the sex offender travels from State A to State B before SORNA's enactment. In other words, the sex offender is convicted and later released in State A; prior to SORNA's enactment, he moves to State B; and then, after SORNA takes effects, he fails to register in State B, as SORNA requires.

Is there any reason why Congress might have wanted to treat the second case any differently from the first? In both cases, a sex offender's interstate movement frustrates enforcement of SORNA's registration requirements. In both cases, as a result of that interstate travel, the sex offender's new neighbors in State B are unaware of the presence of a potentially dangerous person in their community, and the State B law enforcement authorities are hampered in their ability to protect the public. The second case is the case now before the Court, and the Court offers no plausible explanation why Congress might have wanted to treat this case any differently from the first.

If the text of §2250(a) commanded this result, we would, of course, be obligated to heed that command. But the text of §2250(a) dictates no such thing. On the contrary, when properly read, it reaches both cases.

Section 2250(a) provides in pertinent part as follows:

"Whoever—

"(1) is required to register under the Sex Offender Registration and Notification Act . . .

"(2) . . . (B) *travels in interstate or foreign commerce* . . . ; and

"(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

"shall be fined under this title or imprisoned not more than 10 years, or both." (Emphasis added.)

As I read this language, neither the use of the present tense in paragraph (2)(B) nor the sequence in which the elements are listed provides any basis for limiting the provision to those sex offenders who move from one State to another after SORNA's enactment.

## I
## A

The dominant theme of petitioner's argument is that the use of the present tense in §2250(a)(2)(B) ("travels in interstate . . . commerce") indisputably means that an offender's interstate travel must occur after SORNA took effect. "There is no mystery about the meaning of the word 'travels,'" petitioner tells us. Brief for Petitioner 15. "[I]n ordinary usage it refers to present or future travel." *Ibid.* According to petitioner, our "inquiry in this case should go no further than the plain language of § 2250(a)(2)(B), which applies to a person who 'travels' in interstate commerce. Congress's use of the present tense is unambiguous, and the statutory language accordingly should be the end of the matter." *Id.*, at 16–17; see also *id.*, at 17 (use of the present tense "travels" is "dispositive"); *id.*, at 18 ("[T]he use of the present tense in the statute should be decisive"); *id.*, at 21 (use of the present tense "is enough to dispose of this case").

## B

A bad argument does not improve with repetition. And petitioner's argument fails because it begs the relevant question. Petitioner belabors the obvious—that the present tense is not used to refer to events that occurred in the past—but studiously avoids the critical question: At what point in time does §2250(a) speak? Does it speak as of the time when SORNA took effect? Or does it speak as of the time when the proscribed conduct occurs? Without knowing the point in time at which the law speaks, it is impossible to tell what is past and what is present or future.

The unspoken premise of petitioner's argument is that §2250(a) speaks as of the time when it became law. And if that premise is accepted, it follows that the use of the present tense in §2250(a)(2)(B) means that the requisite interstate travel must occur after, not before, SORNA took effect. Petitioner's premise, however, flies in the face of the widely accepted modern legislative drafting convention that a law should *not* be read to speak as of the date of enactment. The United States Senate Legislative Drafting Manual directly addresses this point: "A legislative provision speaks as of any date on which it is read (*rather than as of when drafted, enacted, or put into effect*)." Senate Office of the Legislative Counsel, Legislative Drafting Manual §103(a), p. 4 (1997) (emphasis added). The House Manual makes the same point:

> "Your draft should be a movable feast—that is, it speaks as of whatever time it is being read (*rather than as of when drafted, enacted, or put into effect*)." House Legislative Counsel's Manual on Drafting Style, HLC No. 104–1, §102(c), p. 2 (1995).

In accordance with this convention, modern legislative drafting manuals teach that, except in unusual circumstances, all laws, including penal statutes, should be

written in the present tense.  The Senate Manual, *supra*, §103(a), at 4, states: "[A]lways use the present tense unless the provision addresses only the past, the future, or a sequence of events that requires use of a different tense." Similarly, the House Manual, *supra*, §102(c), at 2, advises: "STAY IN THE PRESENT.— Whenever possible, use the present tense (rather than the past or future)." Numerous state legislative drafting manuals and other similar handbooks hammer home this same point.  See, *e.g.*, Colorado Legislative Drafting Manual, p. 5–15 (2009), online at http://www.state.co.us/gov_dir/leg_dir/olls/LDM/OLLS_ Drafting_Manual.pdf (all Internet materials as visited May 26, 2010, and available in Clerk of Court's case file) ("Provisions should generally be stated in the present tense"); Hawaii Legislative Drafting Manual 21 (K. Takayama rev. 9th ed. 2007 reprint), online at http://www.state.hi.us/lrb/rpts96/dftman.pdf ("Use the present tense and indicative mood"); Legislative Research Comm'n, Bill Drafting Manual for the Kentucky General Assembly, §304, p. 19 (14th rev. ed. 2004) ("Use the present tense and the indacative mood"); Maine Legislative Drafting Manual 78 (rev. ed. 2009) ("Laws are meant to be of continuing application and should be written in the present tense"); Massachusetts General Courts, Legislative Research and Drafting Manual 6 (5th ed. 2010) ("Use the present tense and the indicative mood"); New Mexico Legislative Counsel Service, Legislative Drafting Manual 105 (2004 update) ("Statutes are written in the present tense, not the future tense"); Texas Legislative Council Drafting Manual §7.35 (2008) ("Use present tense whenever possible"); West Virginia Legislature Bill Drafting Manual 22 (rev. 2006), online at http://www.legis.state.wv.us/joint/Bill_Drafting/Drafting_ Manual.pdf ("Avoid future tense (will be paid) and future perfect tense (will have been paid). Use present tense (is paid)"); see also Ohio Legislative Service Com-

mission, Rule Drafting Manual 47 (4th ed. 2006), http://www.lsc.state.oh.us/rules/rdm06_06.pdf ("Use present tense. The majority of rules have a continuing effect in that they apply over time. They speak at the time of reading, not merely at the time of their adoption. The present tense therefore includes the future tense").

Once it is recognized that §2250(a) should not be read as speaking as of the date when SORNA went into effect, petitioner's argument about the use of the present tense collapses. In accordance with current drafting conventions, §2250(a) speaks, not as of the time when the law went into effect, but as of the time when the first act necessary for conviction is committed. In the case of §2250(a), that occurs when an individual is convicted of a qualifying sex offense, for it is that act that triggers the requirement to register under SORNA.[4] For present purposes, we must proceed on the assumption that this event may have occurred before SORNA was enacted. Viewed as of the time when such a pre-SORNA conviction takes place, every subsequent act, including movement from State to State, occurs in the future and is thus properly described using the present tense. Accordingly, §2250(a)(2)(B)'s use of the present tense ("travels") supports the application of the statute to a sex offender, like petitioner, who moved from State to State after conviction but before SORNA went into effect.[5]

─────────

[4] Under 42 U. S. C. §16913, a "sex offender" is required to register, and the term "sex offender" is defined as a person who was convicted of a "sex offense." §16911(1). The Court relies on the artificial argument that the first act necessary for conviction under 18 U. S. C. §2250(a) is the failure to register, *ante,* at 6–7, and n. 4, but in real-world terms the first necessary act is plainly the commission of a qualifying offense.

[5] Contrary to the Court's interpretation, see *ante*, at 8–9, *Gwaltney of Smithfield, Ltd.* v. *Chesapeake Bay Foundation, Inc.*, 484 U. S. 49 (1987), does not support petitioner's argument. *Gwaltney* involved a civil action brought under §505 of the Clean Water Act, 33 U. S. C. §1365(a), which authorizes suit against any person "alleged to be in

## C

Petitioner's present-tense argument is particularly perverse in light of the context in which §2250(a) was adopted. When SORNA was enacted, Congress elected not to decide for itself whether the Act's registration require- ments—and thus §2250(a)'s criminal penalties—would apply to persons who had been convicted of qualifying sex offenses before SORNA took effect. Instead, Congress delegated to the Attorney General the authority to decide that question. See §113(d), 120 Stat. 594, 42 U. S. C. §16913(d) ("The Attorney General shall have the authority to specify the applicability of the requirements of [Title I of SORNA] to sex offenders convicted before the enact- ment of this Act").[6] Pursuant to this delegation, the At-

––––––––––

violation" of a National Pollutant Discharge Elimination System permit. In *Gwaltney,* the permit holder had violated its permit between 1981 and 1984, but the permit holder claimed that it had ceased all violations by the time the suit was filed. 484 U. S., at 53–55. This Court held that the phrase "alleged to be in violation" showed that the provision was meant to apply only where an ongoing violation is al- leged. *Id.,* at 59.

The provision at issue in *Gwaltney* differs from §2250(a) in that it specifies the relevant temporal point of reference, namely, the point in time when the allegation of an ongoing violation is made. Section 2250(a) contains no similar specification. Moreover, the *Gwaltney* Court did not read the provision at issue there as speaking at the time when the provision was enacted. As noted above, however, the silent premise of petitioner's argument is that §2250(a) must be read as speaking as of the time of SORNA's enactment.

[6] To be sure, at least two Courts of Appeals have held that SORNA's registration requirements apply by the Act's own terms to those indi- viduals with sex-offense convictions that predate SORNA's enactment. See *United States* v. *Hinckley*, 550 F. 3d 926, 929–935 (CA10 2008); *United States* v. *May*, 535 F. 3d 912, 918–919 (CA8 2008). Other Courts of Appeals, however, have disagreed, reasoning that SORNA's explicit grant of authority to the Attorney General to determine the Act's applicability to offenders with pre-SORNA convictions implies that the Act would not apply to those sex offenders absent the Attorney General's regulation. See, *e.g.*, *United States* v. *Cain*, 583 F. 3d 408,

torney General in 2007 issued an interim rule providing that SORNA applies to pre-enactment convictions. 72 Fed. Reg. 8897 (codified at 28 CFR §72.3).[7]

Petitioner contends that, if Congress had wanted to make §2250(a) applicable to sex offenders who traveled in interstate commerce before SORNA took effect, Congress could have referred in §2250(a)(2)(B) to a person who "traveled," "has traveled," or, at the time of the statute's enactment, "had traveled" in interstate commerce. Brief for Petitioner 19 (internal quotation marks omitted). Any such phrasing, however, would have strongly suggested that §2250(a) reaches persons with pre-SORNA sex-offense convictions—the very question that Congress chose not to decide but instead to leave for the Attorney General.

A brief explanation is needed to make clear why wording §2250(a)(2)(B) in the past tense (or the present perfect or past perfect tense) would have had such an effect. The Court and I agree that §2250(a) applies only to persons who travel in interstate commerce after they are convicted of a qualifying sex offense. See *ante*, at 6; *infra*, at 11–12. Therefore, if §2250(a) had been phrased in the past tense (or the present perfect or past perfect tense), it would

—————

414–415, 419 (CA6 2009); *United States* v. *Hatcher*, 560 F. 3d 222, 226–229 (CA4 2009); *United States* v. *Dixon*, 551 F. 3d 578, 585 (CA7 2008) (case below); *United States* v. *Madera*, 528 F. 3d 852, 856–859 (CA11 2008). Those Courts of Appeals in the latter group, in my view, have the better of the argument. Section 113(d) of SORNA delegates to the Attorney General the "authority to specify the applicability of the requirements of [Title I of SORNA] to sex offenders convicted before the enactment of [the] Act." 120 Stat. 594, 42 U. S. C. §16913(d). The clear negative implication of that delegation is that, without such a determination by the Attorney General, the Act would not apply to those with pre-SORNA sex-offense convictions.

[7] Although not controlling, it is worth noting that one of the two examples the Attorney General included in his February 2007 rule contemplated that pre-SORNA travel would be sufficient to satisfy §2250(a)(2)(B)'s interstate-travel requirement. See 28 CFR §72.3 (Example 2).

seem necessarily to follow that the provision reaches pre-
SORNA convictions.  By using the present tense, Congress
remained neutral on the question whether the Act reaches
those with pre-SORNA sex-offense convictions and left
that question open for the Attorney General.

The conclusion that §2250(a)(2)(B) embraces pre-
SORNA travel is reinforced by the presence of quite a few
other SORNA provisions that plainly use the present
tense to refer to events that, as a result of the Attorney
General's regulation, may have occurred before SORNA
took effect.  For example, an individual may qualify as a
"tier II sex offender" under the Act if, among other things,
his sex offense "*involves* . . . (i) use of a minor in sexual
performance; (ii) solicitation of a minor to practice prosti-
tution; or (iii) production or distribution of child pornogra-
phy."  42 U. S. C. §16911(3)(B) (emphasis added); see also
§16911(4)(B) (offense "*involves* kidnapping a minor" (em-
phasis added)); §16911(7) (offense "involves" certain speci-
fied conduct).  Similarly, a sex offender can qualify as a
"tier II sex offender" if his sex offense "*occurs* after the
offender *becomes* a tier I sex offender."  §16911(3)(C) (em-
phasis added); see also §16911(4)(C) (offense "*occurs* after
the offender *becomes* a tier II sex offender" (emphasis
added)).  A juvenile adjudication, moreover, may qualify as
a conviction for purposes of the Act only if, among other
things, the "offender *is* 14 years of age or older at the time
of the offense."  §16911(8) (emphasis added).[8]

———————

[8]That many of these provisions rely on §16911(1)'s definition of the
term "sex offender" changes nothing.  See *ante*, at 10, n. 6.  Had the
Attorney General not exercised his discretion to make SORNA's regis-
tration requirements applicable to those with pre-SORNA sex-offense
convictions, all of these provisions would have applied to only pos-
tenactment  conduct—notwithstanding  §16911(1)'s  reference  to  "an
individual who *was convicted* of a sex offense."  (Emphasis added.)  But
now that the Attorney General has so exercised his discretion, all of
these present-tense-phrased provisions necessarily must be interpreted
as reaching pre-enactment conduct.  The same conclusion should follow

Congress cast all of these provisions in the present tense, but now that the Attorney General has made SORNA applicable to individuals with pre-SORNA sex-offense convictions, all of these provisions must necessarily be interpreted as embracing pre-enactment conduct.

## II

The Court's second reason for holding that 18 U. S. C. §2250(a) reaches only post-SORNA travel is based on the sequence in which the elements of §2250(a) are listed. The Court concludes (and I agree) that the first listed element (subsection (a)(1) ("is required to register under the Sex Offender Registration and Notification Act")) cannot have been violated until the Act took effect. The Court then reasons that the third listed element (subsection (a)(2)(B) ("travels in interstate . . . commerce")) must be violated after the first. See *ante*, at 6. The Court explains: "Persons convicted of sex offenses under state law who fail to register in their State of conviction would otherwise be subject to federal prosecution under §2250 even if they had not left the State after being convicted—an illogical result given the absence of any obvious federal interest in punishing such state offenders." *Ibid.* In other words, the Court reasons that it would be illogical to interpret the statute as reaching a person who first moves from State A

---

with respect to 18 U. S. C. §2250(a)(2)(B).

  Additionally, I do not suggest that the "default" rule is that provisions written in the present tense apply to past conduct. To the contrary, I had thought it an uncontroversial proposition of statutory interpretation that statutes must be interpreted in context. See, *e.g.*, *United States Nat. Bank of Ore.* v. *Independent Ins. Agents of America, Inc.*, 508 U. S. 439, 455 (1993); see also 1 U. S. C. § 1. And when §2250(a) is read with an eye to the context in which SORNA was enacted, it becomes quite clear that §2250(a)(2)(B) should be interpreted as reaching pre-enactment travel. Giving effect to those contextual indicators, moreover, does not offend the presumption against retroactivity or the *Ex Post Facto* Clause. See n. 10, *infra*.

to State B, then commits and is convicted of a qualifying sex offense in State B, and subsequently, upon release from custody in State B, fails to register as required under the law of that State.

I agree with the Court that there is a good argument that §2250(a) should not be read to apply to such a case, where there is little if any connection between the offender's prior interstate movement and his subsequent failure to register. In the two hypothetical cases discussed at the beginning of this opinion, the offender's interstate movement seriously frustrated the ability of the law enforcement authorities in his new State (State B) to enforce its registration requirements. By contrast, where an offender's interstate movement predates his sex offense and conviction, his interstate movement has little if any effect on the ability of the law enforcement authorities in State B to enforce that State's laws. When a sex offender is released from custody in State B, the ability of the State B authorities to enforce that State's registration laws would appear to be the same regardless of whether that offender had lived his entire life in that State or had moved to the State prior to committing the offense for which he was convicted. Accordingly, it can be argued that Congress cannot have meant to reach this situation. As the Seventh Circuit put it, "[s]ince the statutory aim is to prevent a convicted sex offender from circumventing registration by leaving the state in which he is registered, it can be argued that the travel must postdate the conviction." *United States* v. *Dixon*, 551 F. 3d 578, 582 (2008). It can also be argued that a broader construction would mean that Congress exceeded its authority under the Commerce Clause. See Brief for National Association of Criminal Defense Lawyers as *Amicus Curiae* 16–17.

What the Court's argument shows, however, is not that the interstate travel required by §2250(a) must come *after SORNA's enactment*. Rather, what the Court's argument

suggests is that the interstate travel must come *after the sex-offense conviction*. And because, under the regulation promulgated by the Attorney General, §2250(a) reaches pre-SORNA convictions, this argument does not support the Court's conclusion that the interstate travel needed under §2250(a) must have occurred after SORNA was enacted.

## III

When an interpretation of a statutory text leads to a result that makes no sense, a court should at a minimum go back and verify that the textual analysis is correct. Here, not only are the Court's textual arguments unsound for the reasons explained above, but the indefensible results produced by the Court's interpretation should have led the Court to doublecheck its textual analysis.

SORNA was a response to a dangerous gap in the then-existing sex-offender-registration laws. In the years prior to SORNA's enactment, the Nation had been shocked by cases in which children had been raped and murdered by persons who, unbeknownst to their neighbors or the police, were convicted sex offenders. In response, Congress and state legislatures passed laws requiring the registration of sex offenders. See *Smith* v. *Doe*, 538 U. S. 84, 89–90 (2003); Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Tit. 17, 108 Stat. 2038; Megan's Law, 110 Stat. 1345. Despite those efforts, by 2006 an estimated 100,000 convicted sex offenders—nearly one-fifth of the Nation's total sex-offender population—remained unregistered. H. R. Rep. No. 109–218, pt. 1, p. 26 (2005). The principal problem, a House Report determined, was that sex offenders commonly moved from one State to another and then failed to register in their new State of residence. *Ibid.* In other words, interstate travel was dangerously undermining the effectiveness of state sex-offender-registration laws.

Interpreting §2250(a)(2)(B) to reach only postenactment travel severely impairs §2250(a)'s effectiveness. As interpreted by the Court, §2250(a) applies to a pre-SORNA sex offender only if that offender traveled in interstate commerce at some point *after* SORNA's enactment. As the examples discussed at the beginning of this opinion illustrate, however, there is no apparent reason why Congress would have wanted to impose such a requirement. To the contrary, under the Court's interpretation, the many sex offenders who had managed to avoid pre-existing registration regimes, mainly by moving from one State to another before SORNA's enactment, are placed beyond the reach of the federal criminal laws. It surely better serves the enforcement of SORNA's registration requirements to apply §2250(a) to all pre-SORNA sex offenders, regardless of whether their interstate travel occurred before or after the statute's enactment.

The Court provides only a weak defense of the result its analysis produces. The Court suggests that enhanced information collection and sharing and state enforcement of registration laws were the sole weapons that Congress chose to wield in order to deal with those convicted sex offenders whose whereabouts were unknown when SORNA was passed. See *ante,* at 14–16. I see no basis for this conclusion. There can be no dispute that the enactment of §2250(a) shows that Congress did not think these measures were sufficient to deal with persons who have qualifying sex-offense convictions and who move from State to State after SORNA's enactment. And in light of that congressional judgment, is there any plausible reason to think that Congress concluded that these same measures would be adequate for those with qualifying sex offense convictions who had already disappeared at the time of SORNA's enactment?[9] The Court has no answer,

—————

[9] Contrary to the Court's suggestion, see *ante*, at 15, n. 9, it is no an-

and I submit that there is none.[10]

## IV

For these reasons, I would affirm the decision of the Seventh Circuit, and I therefore respectfully dissent.

———————

swer to point to Congress' decision to delegate to the Attorney General the responsibility of deciding whether §2250(a) should reach persons with pre-SORNA sex-offense convictions. Of course, that delegation created the possibility that the Attorney General would decide that §2250(a) should not apply to such offenders, and if he had so decided it would likely follow that post-SORNA interstate travel would also be required. (This is the case because, as previously explained, there is a strong argument that §2250(a) requires interstate travel that comes after a qualifying conviction.)

Now that the Attorney General has decided that §2250(a) reaches persons with pre-SORNA sex offense convictions, however, the relevant question is this: Is there any reason why Congress might have wanted to draw a distinction between (1) persons with pre-SORNA convictions and pre-SORNA travel and (2) persons with pre-SORNA convictions and post-SORNA travel? And to this question, the Court offers no plausible answer.

[10] Petitioner makes the additional argument that interpreting §2250(a)(2)(B) to reach pre-enactment travel renders the statute an unlawful *ex post facto* law. See U. S. Const., Art. I, §9, cl. 3. Petitioner remained unregistered in Indiana five months after the promulgation of the regulation making SORNA applicable to persons with pre-SORNA sex-offense convictions. For essentially the reasons explained by the Court of Appeals, see *United States* v. *Dixon*, 551 F. 3d, at 585–587, I would reject petitioner's *ex post facto* argument.