**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA
et al. EX REL. MAX BENNETT,
*Plaintiff-Appellant*,

v.

BIOTRONIK, INC.,
*Defendant-Appellee*.

No. 16-15919

D.C. No.
2:14-cv-02407-KJM-EFB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Kimberly Mueller, District Judge, Presiding

Argued and Submitted September 12, 2017
San Francisco, California

Filed December 1, 2017

Before:  Richard C. Tallman and Carlos T. Bea,
Circuit Judges, and Eugene E. Siler,* Senior Circuit Judge.

Opinion by Judge Bea;
Dissent by Judge Siler

---

* The Honorable Eugene E. Siler, Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

**SUMMARY**[**]

**False Claims Act**

The panel affirmed the district court's dismissal of a *qui tam* suit brought under the False Claims Act.

The panel held that the suit was precluded by the government-action bar, 31 U.S.C. § 3730(e)(3), which prohibits a relator from bringing a *qui tam* suit based upon allegations or transactions that are the subject of a civil suit in which the government "is already a party." The government had intervened in a prior *qui tam* suit against the same defendant and had entered into a settlement agreement. The panel held that, despite the use of the present tense in § 3730(e)(3), the government-action bar applies even when the government is no longer an active participant in an ongoing *qui tam* lawsuit. The panel further held that the government-action bar included claims that the government did not settle and that were dismissed without prejudice in the prior suit.

Dissenting, Judge Siler wrote that the government-action bar does not preclude a relator who is an original source from proceeding on claims that were not resolved before the government was dismissed as a party in a prior suit.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Jeremy L. Friedman (argued), Oakland, California, for Plaintiff-Appellant.

Megan Jeschke (argued) and Christopher Myers, Holland & Knight LLP, Tysons, Virginia; Cheryl A. Feeley, Holland & Knight LLP, Washington, D.C.; Vince Farhat, Holland & Knight LLP, Los Angeles, California; for Defendant-Appellee.

Edward Himmelfarb (argued) and Michael S. Raab, Attorneys, Appellate Staff; Phillip A. Talbert, United States Attorney; Civil Division, United States Department of Justice, Washington, D.C.; for Amicus Curiae United States of America.

## OPINION

BEA, Circuit Judge:

### I.

Where an individual has information regarding a fraud perpetrated on the Federal Government, the False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.*, empowers that person—called a "relator"—to bring a suit on the Federal Government's behalf.[1] These are called *qui tam*[2] suits, and have been described as the "primary tool for combatting fraud against the federal government." *U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993).[3]

But the right to bring *qui tam* suits is not absolute.

First, there are restrictions to allow the Government to determine whether the relator's claims are worthy enough to engage federal resources. The *qui tam* complaint is sealed initially for sixty days. § 3730(b)(2). The Government is

---

[1] The False Claims Act has a long history: a version of it has existed since the height of the Civil War in 1863, when President Lincoln asked Congress to pass a law to help combat fraud by defense contractors. *See* Sean Hamer, *Lincoln's Law: Constitutional and Policy Issues Posed by the Qui Tam Provisions of the False Claims Act*, Kan. J.L. & Pub. Pol'y (Winter 1997).

[2] "Qui tam" is an abbreviation of the Latin phrase "qui tam pro domino rege quam pro se ipso in hac parte sequitur," meaning "[he] who sues in this matter for the king as well as for himself."

[3] States have developed analog False Claims Acts as well to combat fraud against the individual States. *See*, *e.g.*, Indiana False Claims and Whistleblower Protection Act, Ind. Code Ann. § 5-11-5.5-1, *et seq.*

required to investigate, § 3730(a), but, if unable to complete its investigation within sixty days, can seek to extend the seal period. § 3730(b)(3). After it completes the investigation, the Government must notify the court if it will proceed with the action. This is referred to as "intervening." § 3730(b)(4)(A). If the Government declines to intervene, the relator may proceed. § 3730(b)(4)(B). If the Government does intervene, the Government will control the action. It may prosecute the action, settle it, or dismiss it.[4]

Second, even if the Government does not intervene and take over the action, the FCA still does not allow every relator to bring a suit, but rather contains a series of "bars" to such suit. Section 3730(d)(3) prohibits a suit by a relator convicted of criminal conduct arising from his role in the fraud against the government. Another bar, § 3730(b)(5)— the "first-to-file bar"—prohibits suits from relators when another relator's *qui tam* action regarding the same conduct is pending. A third bar, § 3730(e)(4)(A)—the "public-disclosure bar"—prohibits a relator from bringing a suit based upon information which has been publicly disclosed in a different proceeding. Finally there is § 3730(e)(3)—the "government-action bar"—which prohibits a relator from bringing a *qui tam* suit "based upon allegations or transactions which are the subject of a civil suit…in which the Government is already a party."

---

[4] The Government's dismissal of the action may be over the objection of the relator as long as the court gives the relator an opportunity for a hearing. § 3730(c)(2)(A). The Government's settlement of the action may be over the objection of the relator so long as the court gives the relator a hearing and the court determines the settlement is fair. § 3730(c)(2)(B).

In a matter of first impression, we are asked to determine the reach of the government-action bar.

II.

On December 31, 2009, Brian Sant filed an FCA *qui tam* action against Biotronik, a medical device supplier.

Sant alleged that Biotronik engaged in a series of wrongful acts including, among other things, (1) the promotion of unapproved and unnecessary medical devices, (2) bribes to physicians in the form of paid, but useless, speaking engagements, (3) the creation of "advisory boards" meant to funnel illegal payments to physicians, and (4) the payment of bribes to physicians in the form of sports tickets, gift cards, Broadway plays, extravagant dinners and travel, and opera tickets. Sant also asserted (5) that Biotronik used sham clinical studies to provide kick-backs for physicians who prescribed its pacemakers and implantable cardiac defibrillators. The "quid" of these benefits to physicians was alleged to procure the "quo" of physicians' use or endorsement of Biotronik's medical devices.

The United States investigated Sant's charges for nearly four years. Finally, on May 14, 2014, the United States intervened in Sant's case and informed the court that it had reached a settlement agreement with Biotronik and Sant on claims related to certain "covered conduct." This conduct included Biotronik's payment for doctors' meals at expensive restaurants and to doctors for membership on a physician advisory board for which proper documentation about specific work performed was not maintained, all in return for the doctors' use of Biotronik devices. The "covered conduct" did not include any of the other allegations, and therefore did not include the alleged sham clinical studies. The case was dismissed in June 2014 with

prejudice with respect to Sant.  With respect to the United States, the case was dismissed with prejudice as to the "covered conduct," and without prejudice with respect to any other conduct.

On March 31, 2010, three months after Sant's complaint was filed, and more than three years before Sant's case was dismissed, Bennett filed a *qui tam* complaint in Nevada federal district court that substantially mirrored the complaint filed earlier by Sant.  Bennett worked at Biotronik from 2004 until 2010 as a product manager, business development manager, district sales manager, and regional sales manager before being terminated. Upon an *ex parte* motion by the United States, the Nevada district court transferred Bennett's case to the Eastern District of California because it overlapped significantly with the complaint filed by Sant.  The United States did not intervene in Bennett's first complaint, and on April 30, 2014, Bennett's case was dismissed without prejudice upon Bennett's request.[5]

On October 14, 2014, Bennett filed the *qui tam* complaint at issue in this appeal on behalf of the United States. The action also included twenty-eight state-law claims based upon certain state-law versions of the FCA, and a claim on behalf of the District of Columbia based upon the District of Columbia Procurement Act, D.C. Code § 2-308.13, *et seq.* In this second complaint, Bennett provided

---

[5] Appellee Biotronik's motion under Federal Rule of Appellate Procedure 27 that this Court take judicial notice of the federal district court dockets in *U.S. ex rel. Doe v. Biotronik, Inc.*, No. 2:09-CV-03617-KJM-EFB (E.D. Cal. Terminated June 6, 2014) ("Sant") and *U.S. ex rel. Bennett v. Biotronik, Inc.*, No. 2:10-CV-01273-KJM-EFB (E.D. Cal. Terminated May 28, 2014) ("Bennett I") is **GRANTED**.

further detail about the "uncovered conduct" described in the *Sant v. Biotronik* complaint, including the alleged sham clinical studies, but otherwise did not allege new claims against Biotronik.  The United States and California both declined to intervene in Bennett's case.  California consented to dismissal of the claims brought on behalf of plaintiff state governments and the District of Columbia.

Biotronik filed a motion to dismiss in October 2015. The district court granted the motion on the basis of 31 U.S.C. § 3730(e)(3), which provides that "[i]n no event may a person bring an action under [the FCA] which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party." **6**   The district court noted that there was no question that Bennett raised substantially the same allegations as those alleged by Sant in the settled and dismissed case *Sant v. Biotronik*, and determined that, because the Government is a party to *Sant v. Biotronik*, Bennett's case—based as it is upon the same "allegations [and] transactions" as *Sant*—is barred. Bennett nevertheless made two arguments: (1) that the statutory

---

**6** The motion to dismiss advanced six arguments: (1) Bennett's claims are barred by *Sant v. Biotronik* and Bennett's first complaint as a matter of claim preclusion; (2) Bennett's claims in this case are duplicative of his claims in his earlier case and should be dismissed as an abuse of judicial process; (3) Bennett's  claims are barred by the government-action bar; (4) another FCA exclusion, the "original source" rule, also bars Bennett's complaint; (5) Bennett does not plead fraud with specificity, as required by Federal Rule of Civil Procedure 9(b); and (6) many of Bennett's allegations are barred by the applicable statutes of limitations.  The district court did not consider each of the arguments put forth by Biotronik in its opinion. Rather, its focus was solely on whether the government-action bar applied. None of Biotronik's other arguments were raised by the parties on appeal, and thus are waived. *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

language of § 3730(e)(3), which is written in the present tense, should not prohibit a subsequent suit, as "*Sant v. Biotronik* is no longer pending," thus meaning that the Government no longer "is" a party to it; and (2) that the Government had intervened in part, but not all, of *Sant v. Biotronik*, as "the *Sant v. Biotronik* case was dismissed without prejudice to allow the Government to pursue claims related to sham clinical studies." The district court ruled against both of Bennett's arguments.

The district court made two rulings regarding Bennett's argument that the use of the present tense in § 3730(e)(3) destroys the government-action bar in cases no longer pending. First, the district court ruled that, because Congress did not include the word "pending" in § 3730(e)(3)—as it does in § 3730(b)(5) ("When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the *pending* action") (emphasis added)— Congress did not express an intention to limit the prohibition contained in § 3730(e)(3) exclusively to pending cases. The district court also ruled that Bennett's interpretation of the statute would clash with the "widely recognized purpose of § 3730(e)(3): discouraging follow-on lawsuits that provide the government with little or no benefit."

In addition to its findings regarding § 3730(e)(3)'s statutory purpose, the district court gave two reasons for its ruling against Bennett's argument that the Government had intervened in part, but not in all, of the earlier case. First, the district court ruled that § 3730(e)(3) does not require a claim-by-claim analysis, but refers merely to "civil suit[s]" and "administrative civil money penalty proceeding[s]" when describing the proceedings which are subject to the government-action bar. Second, the court ruled that the

Supreme Court's decision in *Eisenstein v. City of N.Y.*, 556 U.S. 928 (2009) implied that no claim-by-claim analysis should take place when deciding whether the Government is a party to a suit, but rather demonstrated that when the United States intervenes in a given case, it becomes "a party to the 'lawsuit,' the 'action,' the 'case,' or the 'litigation,' and not merely to an allegation or charge." (internal citations omitted).

This appeal followed.

### III.

The district court's legal conclusions are reviewed *de novo*. *United States v. Forrester*, 512 F.3d 500, 506 (9th Cir. 2008). Thus, the district court's construction or interpretation of a statute is reviewed *de novo*. *United States v. Rivera*, 527 F.3d 891, 908 (9th Cir. 2008).

### IV.

### A.

Both common sense and statutory language demonstrate that the Government remains a "party" even after the cessation of its enforcement action. We therefore hold that the government-action bar applies even when the Government is no longer an active participant in an ongoing *qui tam* lawsuit. The result is neither impractical nor impermissible, but rather the most sensible reading of the FCA.

Section 3730(e)(3) states as follows:

> In no event may a person bring an action
> under subsection (b) which is based upon

> allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.

Bennett reads this language to mean that while "Congress plainly created a bar to *qui tam* actions when a Government action over the same allegations or transactions is currently ongoing, [n]othing in the text suggests a lingering ban on subsequent *qui tam* actions[.]" Appellant's Opening Brief (App. Br.) at 12. In other words, Bennett argues that once an action in which the Government is a party has concluded, the government-action bar would no longer prohibit subsequent suits based on the same allegations as those contained in the concluded case. Bennett would have our analysis hinge on what the definition of the word "is" is, and urges us to rule that the Government no longer "is" a party to cases which are not ongoing. Toward that end, Bennett cites numerous cases from the Supreme Court and the Ninth Circuit which relied on the tense of verbs to determine a statute's temporal reach.[7]

But Bennett is incorrect. The case hinges not on the definition of the word "is," but rather on the definition of the phrase "is already a party." Our legal system instructs that a party remains a party even after litigation ends. Federal Rule of Civil Procedure Rule 60 provides one example. Under Rule 60, a party may move for relief from a final judgment,

---

[7] *See* App. Br. at 13–16. (citing *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49, 64 (1987); *Carr v. United States*, 560 U.S. 438, 448 (2010); *Guidiville Band of Pomo Indians v. NGV Gaming*, 531 F.3d 767, 774–75 (9th Cir. 2008); *United States v. Marsh*, 829 F.3d 705, 708–10 (D.C. Cir. 2016); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 473 (2003)).

order, or proceeding.    Further, the Rule instructs that a motion under Rule 60 "does not affect the judgment's finality or suspend its operation." Fed. R. Civ. P. 60(c). Parties, therefore, retain rights which arise from their party status, even after a judgment is final.    Under Bennett's interpretation of the phrase "is already a party," an individual who brings a Rule 60 motion had ceased to be a "party" to the litigation when the final judgment was entered, but perhaps became a party again at the moment he brought the Rule 60 motion.    The opposite conclusion comports more with the reality of litigation: a person remains a party to his suit, even after the suit's conclusion.[8]

Statutory context only buttresses this interpretation. Under    §    3730(e)(4),    which    immediately    follows

---

[8] Bennett urges that his argument is buttressed by Ninth Circuit and Supreme Court precedent indicating that the present tense of the verb "to be" should be dispositive.  But none of the cases he cites applies here, as each involved a situation where the relevant individual's status was clearly past or present, but not contextually indicated as perpetual.  For example, in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987), the Supreme Court considered whether the Clean Water Act, which allows citizen suits to be brought against any person "alleged to be in violation" of the Act, allowed for plaintiff's citizen suit based on defendant's wholly past violations.  The Court, reversing the Fourth Circuit's refusal to dismiss for lack for subject matter jurisdiction, considered the phrase "alleged to be in violation," and found it unambiguous that the present tense controlled, and that citizen suits could not be brought for wholly past violations.  But the situation in *Gwaltney* is not equivalent to that described in the case at bar.  In *Gwaltney*, there was no dispute that the plain meaning of a party which is "alleged to be in violation" is a party which is currently "violating" – it is an absurd construction to find that a person "is violating" if the violation had occurred some time ago, but is no longer taking place.  By contrast, a party still "is" a party to a lawsuit even after the suit has concluded, because he is still subject to rulings in the case. *See* Fed. R. Civ. P. 60.

§ 3730(e)(3), it is clear that the Government remains a "party" to an action after the action has concluded. That section—commonly referred to as the "public knowledge bar"—states as follows:

> (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party.

Through the phrase "were publicly disclosed," § 3730(e)(4) describes when a prior disclosure of certain "allegations or transactions" would prohibit a subsequent FCA suit. Implicit with the use of the past tense is the fact that those "transactions"—including legal cases—have already taken place. Nevertheless, the statute utilizes the present tense to describe the Government's relationship to those prior transactions: by the terms of the statute, the "allegations…were publicly disclosed" in transactions in which "the Government or its agent is a party." It is unreasonable to read the term "is already a party" from § 3730(e)(3) in isolation and to rule that, when applying § 3730(e)(3), the Government ceases to be a party as soon as an action is no longer pending, but nevertheless to determine, when applying § 3730(e)(4), that the Government "is a party" to cases which have concluded. Rather, we presume that the phrase "is a party" has consistent meaning, and that once a party to an action, the Government remains a party to that action, regardless of the action's conclusion. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 172 (2012) ("The

presumption of consistent usage applies also when different sections of an act or code are at issue.").

Bennett argues that this interpretation of the statute ignores the work done by the word "already," as the word "already" bespeaks the present tense on its own. Bennett states in his reply brief that "[w]hatever it might have intended in § 3730(e)(4), [Congress] could not have thought that a past, concluded action is a case where the government is already a party. Whatever one might think of the lasting legacy of *Marbury v. Madison*, one would not say—in normal language usage—that Secretary Madison is already a party to that case." Reply Brief at 7.

Bennett is quite right. In "normal language usage," we would not say that James Madison is already a party to *Marbury v. Madison*, because James Madison is dead. The Government, however, never dies.

Bennett's interpretation would be the radical one, as a party maintains rights in civil actions which actions can no longer be described as "pending" or "ongoing." The Government cannot be ejected from its status as a party to concluded lawsuits solely due to the subtle addition of the word "already."

Further, within the FCA itself, the statutory language tells us when the lawsuit being described is a "pending" lawsuit. Section 3730(b)(5) of the FCA describes governmental intervention, and states that "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." Congress could have utilized the term "pending" to express the intention for § 3730(e)(3) to lose effect once the prior action was dismissed.

Neither would the district court's interpretation of § 3730(e)(3) be unworkable or incongruous. Bennett argues that the district court's interpretation of § 3730(e)(3) would make § 3730(e)(3) "a mere subset of the public disclosure bar [§ 3730(e)(4)]" because "[a]ny filed Government action based on the same underlying facts would surely result in the public disclosure." Accordingly, Bennett argues that if the district court's interpretation were applied, "the only legislative purpose for enacting § 3730(e)(3) would be to bar actions also barred under § 3730(e)(4), but without an exception for original sources." App. Br. at 39.**[9]**

---

**[9]** Section 3730(e)(4) states as follows:

(4)(A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—

(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which

But Bennett overstates the nature and significance of the statutory overlap.  Section 3730(e)(4) describes numerous possible situations which would not be covered under § 3730(e)(3).  For example, § 3730(e)(4) bars suits brought by non-original sources in which the information that forms the basis for a *qui tam* action was publicly disclosed in the news media, or in a congressional report. Section 3730(e)(3), by contrast, is directed not towards situations of public disclosure, but rather prohibits suits based on information contained in actions in which the Government is a party, regardless whether the relator served as an original source. The possible overlap takes place between § 3730(e)(3) and § 3730(e)(4)(A)(i), the latter of which prohibits lawsuits based on information "publicly disclosed in a Federal…hearing in which the Government or its agent is a party."

There are numerous occasions in which a federal proceeding, or the disclosure which takes place within it, will not be public.  For example, we have concluded that disclosures made in discovery in the course of a civil case, but which have not been filed with the district court, are not "public" for the purposes of the public-disclosure bar. *See U.S. ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1520 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939 (1997). Further, there are a number of federal proceedings which are not necessarily public including, for

allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C.A. § 3730.

example, hearings before the Consumer Product Safety Commission relating to trade secrets. *See* 15 U.S.C. § 2055(a).

Undeniably, there will be numerous relators who are barred both by the government action bar, § 3730(e)(3), and the public disclosure bar, § 3730(e)(4)(A)(i). But the overlap is not absolute, and we have rejected attempts to construe statutory language in an overly narrow manner to avoid such partial overlap. As we explained in *United States v. Carona*, 660 F.3d 360, 369 (9th Cir. 2011):

> It should not be surprising that statutes are not necessarily written so that one and only one statute can apply at a time. To the contrary, statutes often contain overlapping provisions. The term "belt and suspenders" is sometimes used to describe the common tendency of lawyers to use redundant terms to make sure that every possibility is covered. That some wear a belt and suspenders does not prove the inadequacy of either to hold up the pants, but only the cautious nature of the person wearing the pants...Because neither of the statutes, as interpreted and applied by the government and the district court, is entirely subsumed within the other, the two statutes so interpreted coexist in harmony.

(internal citations and quotations omitted). The same can be said with respect to the overlap Bennett identifies. The statutes do not entirely overlap, and their redundancy does not persuade this court to read the statutory language in an overly narrow manner.

As a result, we find that for purposes of § 3730(e)(3) the Government "is a party" to lawsuits which have concluded.

### B.

Bennett argues that even if § 3730(e)(3) bars relators whose allegations are similar to those raised in concluded lawsuits in which the Government is a party, the Government in *Sant* declined party status with respect to the claims which it did not settle. As a result, argues Bennett, § 3730(e)(3) does not apply to Bennett's claims regarding the sham clinical studies, which the Government did not settle, and which were dismissed without prejudice.

The problem with Bennett's argument is that it relies on an unsupportable interpretation of "party status." There is nothing in the FCA which indicates that, upon joining and settling a lawsuit, the government becomes a party to the suit with respect only to those claims which it settles, but is not a party to the suit with respect to those claims which it does not settle. Section 3730(b)(2) describes the process of the Government's intervention in a *qui tam* action. It states that "[t]he Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information." The statute does not state that the Government may intervene in part of the action or as to certain counts or certain claims for relief. Neither does it state that the Government declines party status in those claims it chooses not to prosecute or settle. As the district court found, "Bennett's argument would divide *Sant v. Biotronik* into two 'suits' or 'proceedings' artificially: the action in which the United States intervened and the action in which it did not intervene." But nothing in the statute allows for such division. Indeed, the case which the Government settled had a single case number, docket, and caption. A person's status as a "party" does not hinge

on the outcome of each of the claims of the lawsuit to which he becomes a party.

Further, the Supreme Court recently ruled that party status is conferred on the Government when it has "exercised its right to intervene in the case." *Eisenstein v. City of New York,* 556 U.S. 928, 931 (2009). In *Eisenstein*, five non-resident city employees filed a *qui tam* action.  The government investigated but declined to intervene.  The district court dismissed the case.  After fifty-four days, plaintiffs filed a notice of appeal.  While the appeal was pending, the Second Circuit *sua sponte* asked the parties to brief the issue whether notice of appeal had been timely filed.  The Federal Rules of Appellate Procedure 4(a)(1)(A)–(B) and 28 U.S.C. §§ 2107 (a)–(b) generally require for a notice of appeal to be filed within 30 days of the entry of judgment, but when the "United States or an officer or agency thereof is a party," that time may be extended to 60 days. As a result, the question in *Eisenstein* was whether the Government, when it had declined to intervene but asked to be kept abreast of the case in the form of receipt of pleadings, was a "party" for purposes of the FCA.  The Second Circuit ruled that the Government becomes a "party" when the Government elects to intervene and so, when the Government had declined to intervene, the Government had not become a party in the action—the notice of appeal was therefore required to have been filed within thirty days. The Supreme Court affirmed. The Court in *Eisenstein* did not call for a claim-by-claim analysis, or otherwise indicate that party-status is contingent on anything other than whether it "intervenes in accordance with the procedures established by federal law." *Eisenstein*, 556 U.S. at 933 (2009). The Government intervened in *Sant*. It was therefore a party to it, unsettled claims and all.

Bennett attempts to rescue his argument through a reference to the Supreme Court case, *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007). In that case, plaintiff could be said to have been an "original source" for purposes of § 3730(e)(4)(A) with respect to some of his claims, but not with respect to many of his other claims. The Court found that "[s]ection 3730(e)(4) does not permit jurisdiction in gross just because a relator is an original source with respect to some claim." Rather, such would be "claim smuggling," and the Court ruled that "the plaintiff's decision to join all of his or her claims in a single lawsuit should not rescue claims that would have been doomed by section (e)(4) if they had been asserted in a separate action. And likewise, this joinder should not result in the dismissal of claims that would have otherwise survived." *Rockwell*, 549 U.S. at 476. Bennett argues that "[a]pplying this rationale, it would clash with statutory context to interpret § 3730(e)(3) to prevent Bennett from bringing his *qui tam* action on some claims because the Government joined Sant on other claims in the same suit." Bennett further describes a ruling against him as "smuggl[ing] those claims into dismissal because Sant chose to join them with the intervened claims in a single action."

Bennett here conflates the Government's decision to settle certain, but not all, of its claims, with the "original source" question described by the Court in *Rockwell*. The question before this court is not whether some, but not all, of the claims in a case Bennett joined pass muster as presented by Bennett as an original source. The question is whether the statute's clear language would prohibit Bennett from bringing the case at all, given the fact that the Government was made aware of the claims it ultimately chose not to settle. The existence of multiple claims—some of which the Government settles—has no bearing on the Government's relationship to the entire action. As described above, the

Government becomes a "party" to the suit as a whole when it intervenes. It does not become a "party" to a particular claim or number of claims.

V.

The Government remains a party to suits even after those suits have been settled, and the Government cannot be said "partially" to have intervened in Sant's lawsuit. Bennett's suit is barred by 31 U.S.C. § 3730(e)(3).

**AFFIRMED.**

---

SILER, Circuit Judge, dissenting:

I respectfully dissent for the reasons stated herein. When this case was argued, attorneys for the parties admitted that there was no controlling case either from the Supreme Court or from this court. I am most impressed by the position of the amicus, the United States of America, in interpreting the statute, the False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.*, and in particular the "government-action rule" described in § 3730(e)(3). As the majority opinion recites, the language from that statute precludes "a person [from bringing] an action under [the FCA] which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party."

In this case, the Sant claim against Biotronik was settled and the district court dismissed the case with prejudice as to the United States with respect to the covered conduct described in the settlement agreement, but otherwise without prejudice with respect to the United States. A few months

after the United States had settled the Sant case and after Bennett had voluntarily dismissed his first *qui tam* action, Bennett filed the present action for "uncovered conduct," including the alleged sham clinical studies, but not including conduct in the settlement with the United States. As the United States suggests, when it intervenes in a *qui tam* case on only some, but not all, of the claims in a case, it may choose to settle certain claims and not settle others, allowing the court to dismiss the case without prejudice to the government on the declined claims. Thus, it is possible that the government could later pursue the declined claims if further investigation suggests that action.

The district court and the majority in this case suggest that because the word "pending" does not appear in § 3730(e)(3), as it does in § 3730(b)(5), then even after the case has been dismissed, the United States would continue to be a party. However, I believe that when § 3730(e)(3) suggests that no person may "bring an action under subsection (b) which is based upon allegations or transactions which *are* the subject of a civil suit or an administrative civil money penalty proceeding in which the Government *is* already a party" (emphasis added), the statute refers to the present tense. Although the majority feels that the government is always a party in the case, even after the action has been dismissed, I do not think that it is a party in the full sense of the word. Admittedly, the government may bring a motion post judgment under Federal Rule of Civil Procedure 60 and other similar rules, but the case is over except for certain motions which may be made under Rule 60 or otherwise.

When the False Claims Act was amended in 1986, Congress sought to discourage parasitic actions and to "walk a fine line between encouraging whistle blowing and

discouraging opportunistic behavior." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994). With that objective, courts "should proceed with caution before applying the statutory bar of § 3730(e)(3) in ambiguous circumstances." *United States ex rel. S. Prawer & Co. v. Fleet Bank of Maine*, 24 F.3d 320, 328 (1st Cir. 1994). The government's position is that there is no reason to read the government-action bar to preclude a relator who is an original source, not parasitic, from proceeding on claims that were not resolved before the government was dismissed as a party.

There are other possible procedures which might preclude recovery by Bennett against Biotronik in the district court. In its motion to dismiss the complaint, Biotronik raised several other issues, including preclusion, which the district court could consider if this matter is remanded. Under that principle, Bennett cannot reassert claims that were settled in Sant's *qui tam* suit or already settled by the government.

The United States suggests that the interpretation of § 3730(e)(3) by the district court would tend to discourage relators from bringing forward evidence of fraud after the government has settled a case, because the relator may realize that the government was not aware of certain frauds until the settlement agreement was made public. I agree. In sum, I would find that the district court's interpretation of § 3730(e)(3) was erroneous, and remand the matter to the district court for further proceedings, including the other grounds to dismiss previously raised by Biotronik but not the subject of this appeal.